TRINITY COUNTY LUMBER COMPANY v. H. S. DENHAM.

No. 3184.

1. **Charge — Duty of Owner of Steam Saw Mill to Employes.** — See charge approved as correctly stating the law in an action by an employe against the owners of a steam saw mill for damages for personal injuries inflicted upon plaintiff from defective machinery.

2. **Accident.** — An accident that can not be reasonably anticipated by either of the parties concerned in it, and that occurs without fault of the person charged with it, is not actionable.    The mere fact that an accident happens or an injury occurs is not of itself proof of negligence.

3. **Ordinary Care by Mill Owner.** — It is not the law that there would be no liability if the very occurrence itself complained of could not have been foreseen by the use of ordinary care; but if no danger could be supposed to exist from the defects in the machinery under any circumstances after the exercise of such care, no liability would exist.

4. **Permitting Charge Refused to be Taken by the Jury.** — The defendant asked the following charge: "If the braces in question (which proved defective) were fastened with 20-penny nails or spikes, and the fastenings were reasonably sufficient to guard against any accident therefrom which was probable and could have been reasonably foreseen, then you will find for the defendant."    The instruction was refused, but it was written upon the same paper upon which was written another that was given.    The trial judge in

handing the paper to the jury cautioned them to disregard the refused instruction. Objection was made. *Held*, that while the instruction was properly refused, yet in going to the jury, its rejection emphasized by the remark of the judge, it may have had the effect of withdrawing from their consideration the testimony noted therein, and the act was reversible error.

5. **Employe.**—There being no conflict in the testimony that the plaintiff was an employe of the defendant, and was present in the course of his business when injured, it was not error to refuse instructions submitting in issue whether he was injured when in discharge of the business in which he was employed. See facts.

6. **Repairs of Defective Machinery.** — It is not enough that suitable material for repairs was furnished, and that skillful workmen did the work; it must have been done in a skillful manner in the exercise of due care.

7. **Duty of Mill Owner—Due Care.**—The obligation of a mill owner to the employes is to furnish and use reasonably safe machinery and appliances in operating such mill.

APPEAL from Polk. Tried below before Hon. L. B. HIGHTOWER.

*Robb & Stevenson, James E. Hill* and *J. R. Burnett*, for appellant, cited: Eames v. Railway, 63 Texas, 660; Cool. on Torts, 2 ed., 92, 652; Sjogren v. Hall, 53 Mich., 274; Rev. Stats., art. 1303; 2 Thomp. on Trials, sec. 2593; Belford v. Shipping Co., 35 Hun, 347; Wright v. Rawson, 52 Iowa, 329; Railway v. O'Fiel, 78 Texas, 486; Railway v. Welch, 72 Texas, 298; Malone v. Hathaway, 64 N. Y., 5; Wood's Mast. and Serv., secs. 334, 452.

*Nunn & Nunn*, for appellee.—There is no error of which the appellant can complain in allowing charge number 2 [see opinion], refused, going to the jury; first, because the defendant's attorney had placed both charges on the same piece of paper, one of which the court allowed, and if any cause of complaint could arise it would be for the opposite party; second, because there was no prejudice to defendant, and in the nature of things none could be shown; third, because the bill of exceptions does not show when the objection was made, whether before or after the jury had retired, and to say that he duly excepted does not enable this court to see that the exception was made in due time; nor can this court say that if objection had been made at proper time the cause of complaint would not have been removed; fourth, because to tolerate such an objection thus presented would establish a precedent to encourage counsel by improper practice in presenting charges to entrap the court, and thus secure reversals when verdicts did not suit them.

COLLARD, JUDGE, *Section A.*—This is the second time this cause has been appealed to the Supreme Court. The proceedings of the former appeal will be found reported in 73 Texas, 78, and following. In the first part of the opinion as there reported will be found a clear statement of

the case, which relieves us of a further general statement, except as herein after noticed.

On the last trial there was a verdict and judgment for plaintiff for $15,000, from which the defendant, the Trinity County Lumber Company, has appealed.

In addition to what was shown on the former trial as to the repairs on the idler, two by six inches diagonal braces, testimony of defendants now shows that pieces, one by six inches, were also nailed across the frame for additional support. Hazard and Platt, men employed at the mill at the time of the injury, one in charge of the saw, and the other at work near the idler, testified, however, by depositions, for plaintiff, and said nothing about the cross pieces nailed to the frame.

As most of the assignments of error relate to the charge of court, we will insert the principal part of it, as follows:

"On the question of negligence, you are instructed that it is the duty of those owning and operating steam saw mills, through their agents or managers, to provide suitable and reasonably safe machinery for operating said mills; such kind and character of machinery as is commonly used by skilled and experienced mill men, and such as they could, by the use of ordinary skill and diligence, provide, and a failure so to do and provide would be in law negligence. The mere fact that an accident happens or an injury occurs is not of itself proof of negligence, and mill men are not required by law to exercise the highest possible degree of care and diligence of which the human mind can conceive, or such degree as would prevent every possible accident, but they are only required to exercise ordinary skill and diligence, by which is meant that degree of care, skill, and diligence which an ordinarily prudent man would commonly exercise in the conduct and management of his own business of like character.

"The defendant company was required and it was its duty in law to provide and use an idler of such kind and construction as was ordinarily deemed safe for the purposes for which it was used, and to keep the same in safe repair as far as ordinary skill and diligence could do; and if it did this, then it could not be held liable, and in such case, if you so find, let your verdict be for the defendant.

"If the idler used by the defendant company was defective in character and construction for the purposes for which it was used, or was in such condition of repair as to be unsafe and dangerous in its operation, and defendant's agent or manager, Sloan, or those standing in his stead and vested with like powers and duties, knew of such defect and of such dangerous and unsafe condition, and so knowing continued to use such idler, and in its use and operation a portion of such idler was detached and thrown against the person of plaintiff and injured him, then the defendant company would be liable, and in such case plaintiff should recover; or if the idler was in a defective and dangerous condition, and

the agent and manager, Sloan, and those charged with the duty of supervising and managing defendant's machinery, did not know of the same, but could have known of or discovered such fact by the use of ordinary care and diligence, then the defendant would be liable, and in case you so find, let your verdict be for the plaintiff, Denham; but if said idler was of such character and construction and in such state of repair as to render the same safe as far as ordinary skill and diligence could provide, ascertain, and determine, or if the same was in fact unsafe in construction or repair, but the defects were so hidden or concealed that those charged with the supervision of defendant's machinery did not know of the same, and could not have discovered the same by the exercise of ordinary care, skill, and diligence, then, in such case, the defendant company was not liable, and if you so find let your verdict be for the defendant, the Trinity County Lumber Company.

"The burden of proof is upon plaintiff to establish the negligence or the facts constituting the liability of the defendant company by a preponderance of evidence—that is, by the greater weight and degree of credible evidence; and unless he has done so you will find for the defendant company."

In addition to the foregoing general charge, at the instance of the defendant, the court gave the following special charge: "As to whether defendant was or not guilty of negligence, as alleged, in failing to secure the braces in the idler by proper fastenings, you are charged that the defendant is not an insurer of its employes against accidents from its machinery, nor held to guarantee the safety of its machinery, but is only required to exercise such care as an ordinarily prudent person would exercise under the same circumstances."

Appellant's second assignment of error, not relying on the first, is as follows: "The court erred in refusing to give special charge number 2, asked by appellant; and the court erred in allowing the jury, over appellant's objections, to take with them in their retirement to consider of their verdict said special charge number 2, which had been refused, and in this connection reference is made to appellant's bill of exception number 3."

The refused charge number 2 is: "If the braces in question were fastened with 20-penny nails or spikes, and the fastenings were reasonably sufficient to hold the braces in the proper places, or if the fastenings were sufficient to guard against any accident therefrom which was probable and could have been reasonably foreseen, then you will find for the defendant."

Upon the subject of the safety or want of safety of the idler and its fastenings, the court's charge was sufficient. It provided for all questions to be determined by the jury, and included, but did not specifically refer to, the point made in the requested charge as to the fastening with 20-penny nails. Under the court's charge, if the use of the nails or

spikes was sufficient for safety—reasonable safety—the jury were at liberty to so find.

The latter part of the requested charge, as to anticipated accidents, in so far as the question was involved in the case, was covered by the court's charge. An accident that can not be reasonably anticipated by either of the parties, and that occurs without fault of the person charged with it, is not actionable. If there is no fault or failure of duty on the part of the person to whom the occurrence is attributed, there is no wrong; or, as stated by Cooley, "the thing *amiss*—the *injuria*—is wanting."

As charged by the court below, "the mere fact that an accident happens or an injury occurs is not of itself proof of negligence, and mill men are not required by law to exercise the highest possible degree of care and diligence of which the human mind can conceive, *or such degree as would prevent every possible accident*, but they are required to exercise ordinary skill and diligence, by which is meant that degree of care, skill, and diligence which an ordinarily prudent man would commonly exercise in the conduct and management of his own business of like character."

The jury were then thereafter instructed fully that "if there were defects in the idler, or in its condition after it was repaired, and defendant's manager, Sloan, or those standing in his stead and vested with like powers, knew of the same, or by the use of ordinary care could have known, and so knowing continued to use it," etc. The converse of this proposition was also given to the jury. This was a good charge upon the facts of the case, and made as prominent as need be any question of accident or unforeseen occurrence. It is not the law that there would be no liability if the very occurrence itself complained of could not have been foreseen by the use of ordinary care, but if no danger could be supposed to exist from the defects under any circumstances after the exercise of such care. Cool. on Torts, 2 ed., 92; Sjogren v. Hall, 53 Mich., 274; Leame v. Bray, 3 East., 393; 53 Mich., 212. The court's charge presented the issues correctly and clearly.

But, should the court have allowed the jury to take the refused charge with them in their retirement to consider of their verdict? We think not. It occurred as follows, according to the bill of exceptions, as qualified by the court: Defendant handed the court two special charges, numbers 1 and 2, both written on the same piece of paper. The court gave number 1, and refused number 2, and so endorsed them, but handed both to the jury. When he read number 1 he called the attention of the jury especially to the one "refused" as refused, and told them that they "should not consider it." Defendant "duly excepted to the court's allowing the jury to take with them the said charge number 2, marked 'refused,' because it was calculated to mislead the jury and prejudice defendant upon the jury's consideration of their verdict."

Refused charges should certainly not be given to the jury with other papers. Rev. Stats., art. 1303. As we have before seen, a part of the refused charge contained matter which the jury might have properly considered, but it was not necessary to give it, as it was comprehended in the general charge. The jury may have concluded, under the evidence, that the braces on the idler were securely and safely fastened with the spikes or 20-penny nails. They could have done so. If they read the refused charge, they saw that the court had refused to instruct them, that if the braces were fastened with such nails, and were reasonably safe, they should find for the defendant. This, to them, amounted to a denial of the proposition contained in the refused charge, and meant that the court would not permit a finding for defendant on the ground stated in the charge. The court's direction to the jury, not to consider the refused charge, that it was refused, served only to emphasize the negative of its contents. The two charges being on the same piece of paper, if they could not have been separated, would probably have authorized the court to refuse both, but it did not authorize the course pursued. We think the error in so doing was reversible.

The refusal of the court to give the following instructions requested by defendant is assigned as error:

"3. If you believe from the evidence that at the time of plaintiff's injuries he was not engaged in the line of his duty, and had no business at the mill where he was hurt, or business which called for his presence there, you will find for the defendant."

"5. If plaintiff's presence at the mill where he was hurt was because he had cut a log or logs too long, and but for which his presence at the mill would not have been required, and his presence where he was hurt was caused by his failure to have a log or logs cut the proper length, then the defendant owed no duty to plaintiff, and in such case you will find for the defendant."

No new facts were developed on the last trial that should induce us to hold views different from those expressed in the opinion of the Supreme Court on the former appeal.

There is no conflict in the evidence as to plaintiff's being in the employ of the defendant company, or of the fact that he was present at the mill in the performance of his duties as such employe. The evidence establishes these facts without contradiction.

If it be true that plaintiff had cut logs too long, and his presence at the mill was on that account, he would have the right to be there for such purpose. If he was in fault for cutting logs too long, such fault would not deprive him of the right to go to the mill for information upon the subject, and ascertain what his duties were. It could not be said that the failure to cut logs the right length was in any sense contributory negligence, as related to his cause of action in this case. It had nothing to do

with the case, except to furnish an explanation of why he was at the mill, if he was there in fact for that purpose.

He went to the mill to see if another log would be needed in the place of the one which Sloan, the mill manager, had told him was beginning to show red, and while there he was told that he was cutting the logs too long. While testing this by rolling a log on the carriage, he laid down his slicker and measuring pole. After he and others had satisfied themselves about the length of the logs, he went to pick up his slicker and measuring pole, and while there, at or near the place where he had laid them, he was struck. Plaintiff was at the mill in the discharge of his duties, and the court may have assumed as much in the charge. There was no error in refusing the requested charges.

Appellant insists that the court erred in refusing to charge, " If a short time before plaintiff's injury the idler was repaired by defendant's employes, and defendant supplied all suitable material necessary to repair the idler and make it reasonably safe and secure, and the said idler was repaired by competent workmen, skilled in the business, then you will find for defendant."

If the court's charge had not embraced every correct principle in this charge, it should not have been given. The duty of defendant was not fully performed when it had furnished suitable material for repairs, and had the idler repaired by skilled workmen. The frame may have been in such condition that a new one would be necessary, and repairs, however skillfully made, would not have come up to the requirements of defendant's duty; but the repairs, if they would have been sufficient, must have been skillfully made; it was not enough that suitable material was furnished and that skilled workmen did the work; it must have been done in a skillful manner.

The court's charge, that it was defendant's duty to provide and use an idler of such kind and construction as was *ordinarily deemed* safe, is criticised by an assignment of error, because the question was not whether it was ordinarily *deemed* safe, but whether it *was in fact* reasonably safe. The distinction is very critical, but we think the charge would have been better in the form suggested by the assignment.

It is said that there was error in the court's charge, in making the main question of fact depend upon whether defendant was guilty of negligence in the construction or repair of the idler, and in charging, that if the idler was unsafe, and appellant knew it or ought to have known it, to find for appellee. The assignment contends that the charge " was on the weight of evidence, and assumed, and the whole charge assumed, that if the idler was defective, appellee's injuries were the proximate result of such defective condition, and thereby determined a question of fact for the jury; and that the whole charge was erroneous, because it made appellant absolutely liable to appellee if the idler was defective, whether its defective

condition proximately caused appellee's injuries or not, or whether appellant owed appellee any duty or not at the time of his injuries." This assignment, as in the appellant's brief, says the court charged the jury that appellee was hurt by a portion of the idler. This was probably not intended, but at all events the fact was not so stated in the charge.

There was no question of contributory negligence in the case, nor is there any doubt but that defendant's obligation to its employes was to furnish and use reasonably safe machinery and appliances in operating its mill. If it was guilty of negligence in failing to do this, and used a defective and unsafe idler, knew it to be so, or would have known it by the exercise of ordinary care, plaintiff knowing nothing of it at all, and while in operation a piece of the idler flew off because of the defect, struck plaintiff and injured him, the company would be liable. The court, as we understand the charge, so instructed the jury. If there is any part of it that is wanting in this respect, our attention has not been called to it, and we are not required to notice it unless specially directed to it by the assignment. After charging such facts, conditioned that the jury so found them, there was no occasion to charge as to proximate cause.

If defendant wished the charge amended in this respect—if it needed any amendment, which we do not find—it should have asked a suitable charge. If any extraneous cause was shown by the evidence to have knocked the brace out of its place, for which defendant was not responsible, or if the injury was caused by any other force than that alleged, plaintiff could not recover. But we can not say it was the court's duty, as the case was presented by the evidence, to give a charge to that effect. If such an issue was made, it was defendant's duty to ask a suitable charge.

The court should limit a recovery in its charge to matters complained of, and the items of expense set up in the petition and established or put in issue by the testimony.

Other assignments of error are, that the verdict is excessive, and is not supported by the evidence. The questions need not be discussed further than has been incidentally done in the foregoing.

We are of opinion, that for the error of the court in permitting the refused charge to be taken by the jury in their retirement to consider of their verdict, over objections of defendant, the judgment of the lower court should be reversed, and the cause remanded.

*Reversed and remanded.*

Adopted May 24, 1892.

Motion for rehearing refused.